**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| RUTH DAVIS and JIM OGLETREE, individually and on behalf of a class of all others similarly situated, | |
| *Plaintiff*, | Case No. 5:24-CV-328-MTT |
| v. | |
| UNITED BANK CORPORATION RETIREMENT PLAN COMMITTEE, JENNIFER W. EAVENSON, JAMES J. EDWARDS, JR., J. JOSEPH EDWARDS, SR., ALLIE E. ARMISTEAD, CHRISTOPHER C. EDWARDS, JOHN W EDWARDS, JR., LAURIE E. FISHER, C. THOMAS HOPKINS, JR., STEVE C. KEADLE, DOUGLAS J. TUTTLE, AND FORREST A. WATSON, JR., UNITED BANK CORPORATION, UNITED BANK, JOHN DOES 1-10, and JANE DOES 1-10. | |
| *Defendant*, | |
| and | |
| THE UNITED BANK EMPLOYEE STOCK OWNERSHIP PLAN, | |
| *Nominal Defendant* | |

## ORDER CERTIFYING CLASS & GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

This case came before the Court on Plaintiffs' Unopposed Motion for Class Certification (ECF 33), and Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF 35). Based upon the Court's review of the motions and the memoranda and exhibits submitted with them, the Court preliminarily certifies the Class for settlement purposes, grants preliminary approval of the Settlement, and finds as follows:

**Class Certification**

1.      Counts I through IX in the Complaint (the "Class Claims") are hereby preliminarily certified as a class action for settlement purposes pursuant to Rule 23(b)(1) and (b)(2) on behalf of the following Class:

> All participants in the United Bank Corporation Employee Stock Ownership Plan who terminated employment with UBC and who had not reached age 65 when the UBC stock in their Plan account was liquidated (in whole or in part) between September 23, 2021 and October 31, 2021 and the beneficiaries of such participants, except the Excluded Persons.

> "Excluded Persons" means the following persons are excluded from the Class: (1) Defendants and their immediate families, (2) any other fiduciaries of the Plan and their immediate families; (3) the officers and directors of United Bank Corporation and their immediate families; (4) the directors and executive officers of United Bank and (5) the legal representatives, successors, and assigns of any such excluded persons.

**Standing**

2.      "[A]ny analysis of class certification must begin with the issue of standing. " *Gamache v. Hogue*, 338 F.R.D. 275, 283 (M.D. Ga. 2021) (quoting *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987)). Plaintiffs clearly satisfy the injury in fact requirement for Article III standing because they "held stock in the ESOP—the same stock that was allegedly harmed by Defendants' actions." *See id.* at 284. To satisfy "statutory" standing, an ESOP plaintiff need merely be (1) a plan participant at the time of the violation who (2) has a non-frivolous claim for benefits. *See id.* at 284. Plaintiffs have standing here because "[i]f Plaintiffs prevail,

the ESOP will recover the amount that would have been in the ESOP absent Defendants'
alleged ERISA violations and those amounts will be distributed among the participants." *Id.*
Thus, Plaintiffs have both statutory and constitutional standing to sue.

**Class Definition & Ascertainability**

3.      The Eleventh Circuit has held that Rule 23(b)(3) implicitly requires that "the
proposed class is 'adequately defined and clearly ascertainable.'" *Carriuolo v. Gen. Motors Co.*,
823 F.3d 977, 984 (11th Cir. 2016) (quoting *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304
(11th Cir. 2012)). The binding "law of th[is] Circuit is that ascertainability is not a requirement
for certification of a (b)(2) class." *Jones v. Desantis,* No. 4:19CV300-RH/MJF, 2020 WL
5646124, at *6 (N.D. Fla. Apr. 7, 2020) (finding that the still "controlling case is *Carpenter v.
Davis*, 424 F.2d 257, 260 (5th Cir. 1970)"). The Eleventh Circuit has traditionally "collapsed
class definition and ascertainability into one inquiry." *Cherry v. Domestic Corp.*, 986 F.3d 1296,
1302 (11th Cir. 2021). Based on the proposed class definition, the following criteria can be used
to ascertain who belongs to the class: (1) participation in the Plan or beneficiary status and (2)
the date at which the relevant individual became a participant in the plan or was entitled to a
benefit statement. Assuming that ascertainability is a requirement for Rule 23(b)(1) or (b)(2)
classes, this proposed class definition is appropriate and ascertainable.

**Rule 23(a) Factors**

***Impracticability of Joinder***

4.      Rule 23(a)(1) requires that a class be "so numerous that joinder of all class
members is impracticable." Fed. R. Civ. P. 23(a)(1). In this circuit, "less than twenty-one is
inadequate, more than forty adequate, with numbers between varying according to other factors."
*Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (reversing decertification

for insufficient numerosity); *Pettway v. R. L. Zigler Co.*, No. 7:23-CV-00047-LSC, 2024 WL 3656750, at *4 (N.D. Ala. Aug. 2, 2024) (explaining the same). Where the Class consists of more than 40 persons, the class satisfies Rule 23(a)(1) based on numbers alone. *See Hoak v. Plan Adm'r of the Plans of NCR Corp.*, No. 1:15-cv-3983-AT, 2017 WL 11709989, at *12 (N.D. Ga. Sep. 27, 2017) (finding that "it is clear that the subclass satisfies the numerosity requirement in having at least 54 members."). Here, the Class consists of approximately 74 participants in the Plan plus their respective beneficiaries. Thus, the Class satisfies Rule 23(a) based on numbers alone.

### *Commonality*

5.      Commonality requires "that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009). The class members' claims must "depend upon a common contention ... of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). In ERISA cases with similar claims, courts have found that commonality was met. *Gamache*, 338 F.R.D. at 286-87 (finding Plaintiffs "leapt over" commonality requirement in certifying ESOP case); *In re Suntrust Banks, Inc. ERISA Litig.*, No. 1:08-CV-03384-RWS, 2016 WL 4377131, at *6 (N.D. Ga. Aug. 17, 2016) (finding commonality in ERISA case where "the one issue central to Plaintiffs' claim is whether Defendants breached fiduciary duties owed to the Plan by failing to act prudently and solely in the interests of the Plan"). Here, the Class Claims allege that Defendants breached their fiduciary duties and engaged in prohibited transactions under ERISA regarding the valuation and/or liquidation of UBC stock in the Plan. Compl. ¶¶ 1-7. As the Class

Claims challenge a liquidation at an identical or nearly identical time based on the same valuation, they raise common questions of law and fact. The issues of liability on each count are common to all members of the Class and are capable of common answers as those issues primarily focus on Defendants' acts. The resolution of these issues would resolve the claims in one stroke. *Dukes*, 564 U.S. at 350. Thus, Rule 23(a)'s commonality requirement is satisfied.

      *Typicality*

      6.     The typicality requirement "measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322–23 (11th Cir. 2008) (internal citation omitted). "A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). Plaintiffs' Class Claims are typical of those of the Class because they arise from the same event, practice and/or course of conduct and seek the same relief. Additionally, those claims seek recovery and relief on behalf of the Plan.

      7.     "Affirmative defenses do not automatically preclude certification of a class." *Schojan v. Papa Johns Int'l, Inc.*, 303 F.R.D. 659, 670 (M.D. Fla. 2014) (finding defense did not make plaintiff atypical). A defense undermines certification only where it is "unique to the named plaintiff or a small subclass" and "predictable" that it will be "a major focus of the litigation." *Ross v. Bank S., N.A.*, 837 F.2d 980, 991 (11th Cir. 1988) (affirming certification), *vacated on other grounds*, 848 F.2d 1132 (11th Cir. 1988) (en banc). Here, there does not appear to be any unique defenses against Plaintiffs as to their Class Claims.

      *Adequacy of Representation*

      8.     Rule 23(a)(4) requires that "the representative parties will fairly and adequately

protect the interests of the class." Fed. R. Civ. P. 23(a)(4). For this analysis, courts consider: "(1) whether [the class representatives] have interests antagonistic to the interests of other class members; and (2) whether the proposed class counsel has the necessary qualifications and experience to lead the litigation." *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 555 (N.D. Ga. 2007).

9.      Rule 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997). A conflict must be fundamental; "[m]inor differences in the interests of the class representatives and the class are not enough to defeat class certification under the adequacy requirement." *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1275 (11th Cir. 2021). There are no fundamental conflicts where "all class members share common objectives and the same factual and legal positions and have the same interest in establishing the liability of defendants." *Owens v. Metro. Life Ins. Co.*, 323 F.R.D. 411, 418 (N.D. Ga. 2017).

10.     This is especially true in the ERISA context "[s]ince a § 502(a)(2) claim is brought on behalf of the Plan, any recovery will benefit the Plan and, indirectly, the members of the class." *Piazza v. Ebsco Indus.*, *Inc.,* 273 F.3d 1341, 1352 (11th Cir. 2001); *see also In re Suntrust Banks, Inc. ERISA Litig.*, 2016 WL 4377131, at *7 (explaining that the nature of plan-wide relief sought made alleged intra-class conflicts "irrelevant"). Nothing suggests that Plaintiffs have any interests antagonistic to the Class. As the Class Claims allege that all Class Members either should not have had their stock forcibly liquidated or the stock was liquidated at too low a price, a favorable result for the Class would only benefit the members of the Class.

11.     Counsel are adequate if they are "qualified, experienced, and generally able to conduct the proposed litigation." *Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir. 1985).

6

Counsel can make this showing based on declarations that establish "many years of experience in class action litigation." *Stalley v. ADS All. Data Sys., Inc.*, 296 F.R.D. 670, 683 (M.D. Fla. 2013) (rejecting arguments that counsel was not qualified). Here, Plaintiffs' counsel have significant experience in ESOP litigation and complex class actions, including in this district. *Gamache*, 338 F.R.D. at 286-87 (appointing Mr. Barton as co-lead class counsel in ESOP case); *see New England Biolabs, Inc. v. Miller*, No. 1:20-cv-11234-RGS, 2022 WL 20583575, at *2 (D. Mass. Oct. 26, 2022) (recognizing Mr. Barton's "extensive experience" litigating complex ERISA class actions in an ESOP case); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1256 (11th Cir. 2021) (Barnes Law Group serving as co-class counsel in class action with over 140 million class members); *Cox v. Cmty. Loans of Am., Inc.*, No. 4:11-cv-00177-CDL, 2016 WL 9130979, at *3 (M.D. Ga. Oct. 6, 2016) (finally approving proposed multistate class action settlement achieved after certification granted over defendants' objection, with Mr. Barnes and Mr. Tribble among those serving as class counsel). Thus, the Class has been, and will be, adequately represented by its representatives and counsel.

**Rule 23(b)(1)**

12.    Certification under Rule 23(b)(1) is appropriate where either individual litigation of the claims of the Class would have the practical effect of impairing the interests of non-parties, or where the party is obliged to treat members of the class alike. Fed. R. Civ. P. Rule 23(b)(1). Certification under Rule 23(b)(1) is common in ERISA cases. *In re Suntrust Banks, Inc. ERISA Litig.*, 2016 WL 4377131, at *8 (finding certification "undoubtedly proper under (b)(1)(B) … as numerous courts have held"). ERISA breach of fiduciary duty claims are recognized as "paradigmatic examples of claims" for which Rule 23(b)(1) applies. *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3rd Cir. 2009). Here, the Class Claims meet the

requirements of Fed. R. Civ. P. 23(b)(1).

13.     Certification under Rule 23(b)(1)(B) is appropriate where, if the action were litigated individually instead of as a class, it would have the practical effect of impairing the interests of persons who are not parties to the lawsuit. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999) (citing the 1966 Committee Notes and noting one paradigmatic example is "an action which charges a breach of trust by a[ ] ... trustee or other fiduciary similarly affecting the members of a large class of security holders or their beneficiaries."). "[T]he structure of ERISA favors the principles enumerated under Rule 23(b)(1)(B), since the statute creates a 'shared' set of rights among the plan participants by imposing duties on the fiduciaries relative to the plan, and it even structures relief in terms of the plan and its accounts, rather than directly for the individual participants." *Leber v. Citigroup 401(k) Plan Inv. Comm.*, No. 07-CV-9329 (SHS), 2017 WL 5664850, at *17 (S.D.N.Y. Nov. 27, 2017). As another court certifying similar claims explained, the resolution of these claims would be dispositive of the interests of the other participants in the Plan even if they are not parties to this litigation and would substantially impair or impede their ability to protect their interests if they are not made parties to this litigation by being included in the Class. *Miller*, 2022 WL 20583575, at *2. An adjudication regarding these issues – for example, the correct valuation/price for the stock – would, as a practical matter, adjudicate these issues with respect to the other similarly situated participants in the Plan. *Id*. Additionally, the monetary relief sought would be paid to the Plan and then allocated to Class members' individual accounts. Compl. ¶ 7 & Prayer for Relief ¶¶ F, G. Thus, the requirements of Rule 23(b)(1)(B) are met.

14.     Rule 23(b)(1)(A) applies in cases "where the party is obliged by law to treat the members of the class alike […], or where the party must treat all alike as a matter of practical

necessity[.]" *Amchem*, 521 U.S. at 614 (citing 1996 Committee Note to Rule 23). ERISA

administrators are required to treat similarly situated participants consistently. *In re J.P. Morgan*

*Chase Cash Balance Litig.,* 242 F.R.D. 265, 275-76 (S.D.N.Y. 2007) (certifying ERISA claims

under Rule 23(b)(1)(A)); *see Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 965 (9th Cir.

2016) (affirming certification of ERISA claims under Rule 23(b)(1)(A)). As another court

explained in certifying analogous claims involving employer stock, fiduciaries of an ERISA-

covered plan "had a duty to treat all ESOP participants alike." *Bowers v. Russell,* 766 F.Supp.3d

136, 152 (D. Mass. 2025) (certifying claims under Rule 23(b)(1)(A)). As a result, "independent

actions by ESOP participants would risk differing adjudications on whether the same behavior

by Defendants qualified as a breach of their fiduciary duties." *Id.* Here, the Class Claims are

asserted against Defendants as fiduciaries who are required by law to consistently apply the

terms of the Plan to all similarly-situated participants. And the Class Claims challenge whether

Defendants acted consistently with their fiduciary duties or otherwise violated ERISA as to all

the former employee-participants – with respect to the forced liquidation and the price of the

stock paid to establish that price. Compl. ¶ 3. As the Plan is required to treat similarly situated

participants similarly, separate lawsuits reaching different results could result in conflicting

adjudications, making uniform administration of the Plan impossible. As varying or inconsistent

adjudications regarding, for example, the duties of Defendants, the rights of participants under

the Plan, or the correct valuation of UBC stock would establish incompatible standards of

conduct in administering of the Plan, certification under Rule 23(b)(1)(A) is proper.

15.    As such, varying or inconsistent adjudications regarding the rights of participants

under the Plan, or the adequacy of Defendants' disclosures would establish incompatible

standards of conduct. For similar reasons, an adjudication regarding these issues would, as a

practical matter, adjudicate these issues with respect to the other participants in the Plan.

**Rule 23(b)(2)**

16.    Certification under Rule 23(b)(2) is appropriate where (1) "the party opposing the class has acted or refused to act on grounds that apply generally to the class, [(2)] so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2); *See Gumm v. Ford*, No. 5:15-CV-41-MTT, 2019 WL 479506, at *2 (M.D. Ga. Jan. 17, 2019) (Treadwell, J.) (certifying under Rule 23(b)(2) because all class members were subject to the same practices by Defendants).

17.    "Courts routinely have certified classes pursuant to [Rule 23(b)(2)] where, as in the instant case, an ERISA plan administrator makes a uniform decision about administering the Plan as it applies to the putative class members." *Cottillion v. United Refining Co.,* No. 09-140E, 2013 WL 5936368, at *6 (W.D. Pa. Nov. 5, 2013). As a case involving similar claims explained, Defendants acted on the same grounds as to all members of the Class by allegedly breaching their fiduciary duties in connection the valuation of stock in the Plan. *See Miller*, 2022 WL 20583575, at *2. Here, the issues involve whether Defendants violated ERISA as to the Class as a whole. As a result, Defendants have acted or failed to act on grounds generally applicable to the Class, making declaratory and injunctive relief appropriate with respect to the Class as a whole. As the focus under Rule 23(b)(2) is on whether Defendants' conduct was uniform as to the Class, the first criterion of Rule 23(b)(2) is satisfied.

18.    Rule 23(b)(2) applies to claims that seek "injunctive or declaratory relief" for the class. *Dukes*, 564 U.S. at 360-61 (explaining Rule 23(b)(2) certification is appropriate "when a single injunction or declaratory judgment would provide the relief to each member of the class"). Rule 23(b)(2) is satisfied even where a declaratory judgment is "merely a prelude to a request for

[monetary relief]." *Berger v. Xerox Corp. Ret. Income Guarantee Plan*, 338 F.3d 755, 763 (7th Cir. 2003) (affirming certification of ERISA claims under Rule 23(b)(2)); *Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364, 371 (7th Cir. 2012); *see Amara v. CIGNA Corp.*, 775 F.3d 510, 523 (2d Cir. 2014) (affirming Rule 23(b)(2) certification of ERISA claims because "[w]hen the plan is reformed . . . monetary benefits flow as a necessary consequence of that injunction"). As the Supreme Court has explained, not only does ERISA permit a participant to obtain an injunction or a declaration, "[b]ut the fact that th[e] relief takes the form of a money payment does not remove it from the category of traditionally equitable relief." *CIGNA Corp. v. Amara*, 563 U.S. 421, 441 (2011) (concluding "injunctions requir[ing] the plan administrator to pay to already retired beneficiaries money owed them under the plan as reformed" was appropriate equitable relief). As ERISA is based on trust law, the Complaint does not seek damages (i.e. legal relief), but equitable monetary relief either provided directly by the declaratory or injunctive relief or flowing as a necessary consequence of that relief. Compl. at Prayer for Relief ¶¶ A-P. Here, each form of relief sought is based on a declaration or injunction. *See id.* Any monetary relief would flow from the declaratory relief. As a result, the monetary relief will not determine the key procedures to be used, will not introduce any new and significant factual or legal issues, and will not require individualized hearings. Thus, the lawsuit primarily, if not exclusively, seeks final declaratory and injunctive relief.

19.    The Eleventh Circuit has held that if a claim can be certified as a mandatory class, it is an error to certify the claims under Rule 23(b)(3). *Piazza*, 273 F.3d at 1352-53 (holding certification of ERISA claim that met requirements of Rule 23(b)(1) should not have been certified under Rule 23(b)(3)). Because the Class is suited for certification under Fed. R. Civ. P. 23(b)(1) and 23(b)(2), the Court need not address whether the Class may also be certified under

23(b)(3).

20.    Ruth Davis and Jim Ogletree are appointed the representatives of the Class.

21.    R. Joseph Barton of The Barton Firm and J. Cameron Tribble of Barnes Law Group are appointed Co-Lead Class Counsel pursuant to Rule 23(g).

**Preliminary Approval of the Settlement**

22.    Preliminary approval is the first step in the class settlement process. *Manual for Complex Litigation* § 21.632 (4th ed. 2004). "To approve a class settlement, the Court must find 'that it is fair, reasonable, and adequate' in light of the adequacy of the representation of the class, the manner in which the settlement was negotiated, the adequacy of the relief provided to the class under the agreement, and the fairness of treatment of the class members relative to each other." *Gumm*, 2019 WL 479506, at *3 (quoting Fed. R. Civ. P. 23(e)(2)). In granting preliminary approval, the Court considers "whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a fairness hearing." William B. Rubenstein *et al.*, *Newberg on Class Actions* § 13:10 (5th ed. 2013). "There is a strong presumption favoring the settlement of class action lawsuits." *Pettway*, 2024 WL 3656750, at *6 (citing *In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d 1330, 1341 (S.D. Fla. 2011)).

23.    The Court finds that the Settlement Agreement is the result of serious, informed, and non-collusive negotiations. A settlement is not the result of collusion when it "was agreed upon through arm's length negotiations between experienced attorneys who are informed of and familiar with the legal and factual issues." *Pettway*, 2024 WL 3656750, at *7. The assistance of a neutral mediator reinforces that a settlement is non-collusive. *Poertner v. Gillette Co.*, 618 F. App'x 624, 630 (11th Cir. 2015) (affirming approval of classwide settlement agreement where "the parties settled only after engaging in extensive arms-length negotiations"). Here, Plaintiffs'

12

counsel is not only experienced in ERISA and ESOP class actions, and familiar with the legal issues but also requested and obtained the relevant documents and data necessary to evaluate the claims and negotiate the terms of a settlement. Additionally, the mediation was conducted by a neutral mediator with significant ERISA experience, Douglas Hinson. Thus, the Class was adequately represented by informed counsel who engaged in arms-length negotiations.

24.    The proposed Settlement provides substantial relief to the Class and falls within the range of reason. The monetary component of the Settlement Agreement provides for payment of $2,000,000.00 to a settlement fund for the benefit of the Class, which Class Counsel represents is approximately 43% of the maximum amount that Class members could potentially recover at trial based on the valuation claims. ECF 35-1 at 18; 35-2 ¶ 8. This is an excellent result compared to other ERISA class settlements approved by other courts. The average gross recovery of more than $27,222.78 per class member in this Settlement is significantly more than the amount recovered in many other approved ERISA class actions. *E.g., Pettway*, 2024 WL 3656750, at *8 (approving settlement where 178 class members received an equal share of $253,700.00 or $1,425.28 each); *Goodman v. Columbus Reg'l Healthcare Sys., Inc.*, No. 4:21-CV-00015-CDL, 2024 WL 2963441, at *5 (M.D. Ga. June 12, 2024) (finally approving settlement where "all Class Members will receive a minimum settlement payment of $10"); *Marshall v. Northrop Grumman Corp.*, No. 16-CV-6794 AB (JCX), 2020 WL 5668935, at *2 (C.D. Cal. Sept. 18, 2020) (describing ERISA settlement amounting to $77.34 average gross recovery as "exceptional"); *Sims v. BB&T Corp.*, No. 1:15-CV-732, 2019 WL 1995314, at *5 (M.D.N.C. May 6, 2019) (average gross award of $342); *Will v. Gen. Dynamics Corp.*, No. CIV. 06-698-GPM, 2010 WL 4818174, at *1 (S.D. Ill. Nov. 22, 2010) (average gross award of $96.62).

25.     The specific factors identified in Fed. R. Civ. P. 23(e)(2)(C) also support the fairness and reasonableness of the settlement.

a.     *Costs, Risks & Delay of Trial and Appeal*. ERISA cases are "enormously complex" involving "exceedingly complicated" law and facts. *Conkright v. Frommert*, 559 U.S. 506, 509 (2010). ERISA class actions, which are "novel, complex and specialized, requiring skilled attorneys to successfully prosecute." *Goodman*, 2024 U.S. WL 2963441, at *6. And "ESOP cases are often cited as the most complex of ERISA cases." *Pfeifer v. Wawa, Inc.,* No. 16-497, 2018 WL 4203880, at *7 (E.D. Pa. Aug. 31, 2018). As the litigation here involved issues of valuation, it would have required testimony of an expert, which adds to the costs, delay and the risks. There are numerous examples of ERISA cases where plaintiffs have lost on summary judgment, trial or even had favorable trial decisions reversed on appeal. Moreover, numerous ERISA fiduciary breach cases have taken a decade or more. Indeed, Plaintiffs' counsel were involved in another ESOP case filed in 2019 in this District, *Gamache v. Hogue*, No. 19-cv-21 (M.D. Ga.), for which a trial was held in 2024 and a decision is still pending.

b.     *Effectiveness of Distributing Relief to the Class.* When a settlement ensures that all class members will benefit, the method of distributing relief is effective. *Gumm v. Ford,* No. 5:15-CV-41-MTT, 2019 WL 479506, at *6 (M.D. Ga. Jan. 17, 2019); *Glynn v. Me. Oxy-Acetylene Supply Co.,* No. 2:19-cv-00176-NT, 2022 WL 4234761, at *4 (D. Me. Sept. 14, 2022) (finding this factor met where proceeds distributed by check in ERISA settlement). First, the Settlement does not require class members to submit any claim form to receive payment as the monies will be paid into their Plan account. Agmt § IV.5. Second, the Settlement is structured to preserve the tax-advantaged character of the

Class Members' recovery, and Class Members will have the opportunity to roll over their proceeds into another appropriate retirement vehicle. *Id*. at § IV.5(d)-(e). <u>Third</u>, neither Class Members nor the Fund will bear the costs of receiving those distributions from the Plan. *Id.* § IV.6. <u>Finally</u>, Class Members have the right to submit information related to challenge erroneous data. *Id.* § V.4. Thus, unlike many class action settlements that require claim forms, the proposed method of distribution effectively ensures that all class members will receive financial compensation.

        c.    *Attorneys' Fees.* In the Eleventh Circuit "'[a]ttorney's fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class.'" *Faught v. Am. Home Shield Corp.,* 668 F.3d 1233, 1242 (11th Cir. 2011) (quoting *Camden I Condo Assoc., Inc. v. Dunkle,* 946 F.2d 768, 774 (11th Cir. 1991)). Courts have held, where the requested fees will not exceed one-third, that satisfies the standards on preliminary approval. *Tweedie v. Waste Pro of Fla., Inc.,* No. 8:19-cv-1827-TPB-AEP, 2021 WL 3500844, at *10 (M.D. Fla. May 4, 2021). A decision about the appropriate amount of fees is usually deferred until final approval. *Currie v. Joy Cone Co.,* No. 2:23-CV-00764-CCW, 2024 WL 3157870, at *4 (W.D. Pa. June 25, 2024) (deferring such a decision until final approval because preliminary approval is a lower standard); *Kopchak v. United Res. Sys.,* No. CV 13-5884, 2016 WL 4138633, at *5 (E.D. Pa. Aug. 4, 2016) (deferring decision about attorneys' fees until after the final fairness hearing and upon a review of class counsels' submissions on attorneys' fees). At final approval the Court will have the opportunity to consider the appropriateness of an award. Fed. R. Civ. P. 23(e)(2)(C)(iii). Rejection or modification of Class Counsel's requested fees by the Court will not void the Settlement or provide a basis for any party to

withdraw.

        d.      *Separate Agreements*. Rule 23(e)(3) requires that the Parties "file a statement identifying any agreement made in connection with the [settlement] proposal." Fed. R. Civ. P. Rule 23(e)(3). The Parties have identified two separate agreements here. First is the Supplemental Agreement that sets forth the provision that allows Defendants to terminate the Settlement only if the Court certifies the class under Rule 23(b)(3) and if enough class members opt out. "This type of provision is known as a 'blow-up'" and is "common and guard against the possibility that a sufficient number of class members opt out of a class action settlement such that the Defendant's potential future liability is not reduced in a way that renders the settlement worthwhile." *Mandalevy v. Bofl Holding, Inc.*, No. 3:17-cv-667-GPC-MSB, 2022 WL 4474263, at *9 (S.D. Ca. Sept. 26, 2022); 2 McLaughlin on Class Actions § 6:22 (21st ed.) (explaining such agreements are common and usually filed under seal). Thus, this agreement is proper. The second agreement resolves Plaintiffs' individual claims under ERISA § 104(b)(4). Courts approve class action settlements where the class representative has entered into a separate settlement agreement that resolves and releases "individual claims brought by class representatives that were not certified for class treatment" so long as the class representative did not receive "disproportionate relief when compared to the relief provided to the class" and the individual settlement did not influence the terms of the class settlement. *Rowe v. E.I. DuPont de Nemours and Co.*, CIV. 06-1810 RMB/AMD, 2011 WL 3837106, at *5 (D.N.J. Aug. 26, 2011) (approving class settlement after *in camera* review of the individual settlement); *see Campbell v. Best Buy Stores, L.P.*, LACV1207794JAKSHX, 2015 WL 9685556, at *3 (C.D. Cal. Aug. 19, 2015) (approving class settlement where

separate settlement for class representatives involved "non-certified claims" which were not inconsistent with the class claims and there is no evidence that they placed his own interests ahead of those of the Class); *Quiroz Sandoval v. Roadlink USA Pac., Inc.,* EDCV1000973VAPDTBX, 2012 WL 13070777, at *3 (C.D. Cal. Feb. 28, 2012) (same); *see also Acevedo v. Workfit Med. LLC,* 187 F.Supp.3d 370, 384 (W.D.N.Y. 2016) (approving additional payments to class representative to settle individual case and providing broad release); *see also Tweedie v. Waste Pro of Fla., Inc.*, No. 8:19-cv-1827-AEP, 2021 WL 5843111, at *11 (M.D. Fla. Dec. 9, 2021) (finding individual settlement involving claims that "could have [been] independently negotiated" not "at odds with the interests of the Settlement Class, especially since the compensation does not affect the amount of money available to Settlement Class Members"). Here, the separate agreement involves a release of certain individual claims brought by plaintiffs and pled in the Complaint. As these are individual claims, for which the amount was negotiated after the settlement of the class claims and the amounts are not significant, these settlements are appropriate.

### *Treatment of All Class Members Equitably*

26.    Rule 23(e)(2)(D) requires that all Class Members are treated equitably. "[T]he text of the [Rule 23(e)(2)(D)] requires equity, not equality, and treating class members equitably does not necessarily mean treating them all equally." *In re Blue Cross Blue Shield Antitrust Litig.,* 85 F.4th 1070, 1093 (11th Cir. 2023) (rejecting objector's argument). Class Members are treated equitably here because under the proposed Plan of Allocation, each will be eligible to receive the benefits pursuant to their number of shares that were liquidated.

27.    Here, the Settlement itself does not differentiate between Class Members. Instead,

the Settlement Agreement itself merely provides that the Net Settlement Fund will be allocated and distributed to Class Members through the Plan (to preserve the tax-favored benefits of the money) pursuant to the Court-approved Plan of Allocation. Agmt §§ 4 & 5. The Settlement merely provides that the Plan of Allocation will be proposed by Class Counsel and subject to approval by the Court. *Id.* § V.1 & 3. Modification of the Plan of Allocation by the Court will not prevent the settlement from becoming final. *Id.* § V.3.

28.    In sum, there are no grounds to doubt the fairness of the Settlement Agreement and the proposed Settlement Agreement is within the range of possible settlement approval, such that notice to the class is appropriate.

**Plan of Allocation**

29.    Courts apply the same standard of review "to the review of the allocation agreement as it does to the review of the overall settlement between plaintiffs and defendants." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982). A plan of allocation that allocates the Net Settlement Fund among all eligible Class Members equally is fair reasonable and adequate. *See Pettway*, 2024 WL 3656750, at *8 (granting preliminary approval where "all class members receive an equal share" of the settlement fund). In ESOP class actions, courts approve allocation plans as reasonable where "[t]he way the settlement proceeds will be divided among the class members" is that "[t]he settlement amount (after fees and expenses) will be divided pro rata, based on the number of shares each class member held in his/her ESOP account on [a specified date]." *Kaplan v. Houlihan Smith & Co.*, No. 12 C 5134, 2014 WL 2808801. *3 (N.D. Ill. June 20, 2014); *see Cunningham*, 2021 WL 1626482, at *6 (holding plan of allocation in ESOP case fair, adequate, and reasonable where it distributed settlement funds pro rata based on number of shares previously held by class members). The

Plan of Allocation proposes to allocate the Net Settlement Fund based on the amount of shares that each Class Member held when their shares were liquidated and multiplying that by the difference between the actual share price paid to the Plan account for UBC stock and the adjusted share price as calculated by a financial expert engaged by Class Counsel. The Court finds and preliminarily approves this Plan of Allocation as fair, adequate and reasonable.

**Class Notice**

30.    The Court approves the Proposed Notice of Class Action Settlement ("Class Notice") and directs its distribution to the Class.

31.    The content of the Class Notice fully complies with due process and Federal Rule of Civil Procedure 23. The proposed notice to the Class provides appropriate information to Class Members concerning: (i) the nature of the action; (ii) the definition of the Class certified; (iii) the Class claims, issues, and defenses; (iv) that a Class Member may enter an appearance through an attorney if the Member so desires; (v) that a Class Member may object to the Settlement before it is approved; (vi) the time and manner for making objections; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). *See Manual for Complex Litigation*, *supra*, § 21.312. It also informs Class Members about their rights under the Settlement as well as their right to be heard at the final Fairness Hearing.  The Class Notice also contains a clear statement that the Defendants deny any wrongdoing or loss to the Plan.

32.    Notice provided by first class mail is sufficient when the names and addresses of the Class Members are known. *Pettway*, 2024 WL 3656750, at *9 (finding first class U.S. Mail plus posting information on a website satisfied Rule 23 and due process). Here, the names and addresses of the Class Members are known, and thus notice to the Class by first class mail is appropriate.

33.     Defendants shall produce to Class Counsel the Class Data required pursuant to Section II.10, to the extent not already produced, by no later than **November 13**, **2025.**

34.     The Court appoints CPT Group as the Settlement Administrator for providing Class Notice and otherwise assisting in administration of the Settlement. The Settlement Administrator shall provide notice to the Class no later than **December 16, 2025**. The Settlement Administrator will file a declaration with the Court confirming that the Class Notice was sent in accordance with this Order by **January 16, 2026**.

**Class Action Settlement Procedures**

35.     Any Class Member who wishes to challenge the data with respect to his or her contributions or establish that he or she is a Class Member must submit such a challenge to the Settlement Administrator that has a postmark of no later than **February 17, 2026.** The Challenge must set forth at least the following: (a) the full name, address and contact information for the persons submitting the Challenge; (b) a written statement explaining why the data is incorrect, (c) sufficient supporting documentation, and (d) the signature of the person submitting the challenge.

36.     Any Class Member who wishes to object to this Settlement or otherwise to be heard concerning this Settlement shall timely inform the District Court in writing of his or her intent to object to this Settlement and/or to appear at the Fairness Hearing by following the procedures set forth in the Class Notice ("Objection"). To be considered timely, the Objection must bear a postmark that is no later than **February 17, 2026**. The Objection must set forth at least the following: (a) the full name, address and contact information for the Objector and the name and address of counsel (if represented by counsel); (b) a written statement of any and all objections to this Settlement and any supporting papers and arguments; and (c) the signature of

the Objector (or his attorney).

37.    Any Class Member or other person who fails to make his, her or its Objection in the manner provided shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness or adequacy of the proposed settlement as incorporated in the Settlement Agreement, to the Judgment, to the Plan of Allocation, to the award of attorneys' fees and reimbursement of expenses to Class Counsel, unless otherwise ordered by the Court. To the extent that any objections or comments are transmitted to Settlement Administrator, or the Parties' counsel, but are not filed with the Court, those persons are hereby directed to file such objections with the Court.

**Settlement Fund**

38.    The Settlement Fund meets the requirements of a "qualified settlement fund" for federal income tax purposes under Treas. Reg. § 1.468B-1.

39.    The Settlement Fund will be deemed and considered to be *in custodia legis* of the Court and will remain subject to the jurisdiction of the Court until such time as such funds will be distributed pursuant to the Settlement Agreement and/or the order of the Court.

**Class Action Fairness Act Notice**

40.    The Court approves the form of notice to be provided by the NEB Parties under the Class Action Fairness Act of 2005 ("CAFA") as consistent with the requirements of 28 U.S.C. § 1715(b).

**Deadlines**

41.    Class Counsel will file any Motion for Attorneys' Fees, Expenses and Costs, pursuant to Section VII.1, by **January 29, 2026.**

42.    Class Counsel shall file a Motion for Final Approval of the Settlement by **March**

**5, 2026.**

43.     The Court will hold a final Fairness Hearing on **March 26**, **2026** at **10:00 a.m.,** at the United States District Court for the Middle District of Georgia, 475 Mulberry St., Macon, Georgia 31201. The Court may continue the date of the final fairness hearing if necessary, without further notice to the Class, but any such continuance will be publicized on the settlement website.

**No Admission**

44.     Under no circumstances shall this Order, the Settlement Agreement and its exhibits (or any of their terms and provisions), the negotiations and proceedings connected therewith, or any of the documents or statements referred to therein, be construed, deemed, or used as an admission, concession or declaration by or against any of the Defendants of any fault, wrongdoing, breach or liability.

**SO ORDERED**, this 7th day of November, 2025.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT